UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT EPPS,

            Plaintiff,

    v.

CSP SACRAMENTO, et al.,

            Defendants.

No.  2:14-cv-1347 MCE AC P

ORDER and
FINDINGS AND RECOMMENDATIONS

I.      Introduction

      Plaintiff is a state prisoner incarcerated under the authority of the California Department of Corrections and Rehabilitation (CDCR).  Plaintiff proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983, on claims that defendant Correctional Officers Deleon and Sakyi used excessive force against plaintiff in violation of the Eighth Amendment.  See ECF No. 24.  Presently pending is defendants' motion for summary judgment based on plaintiff's conceded failure to exhaust his administrative remedies before commencing this action.  See ECF No. 58.  Also pending is plaintiff's third motion for appointment of counsel.  See ECF No. 57.  For the reasons that follow, this court recommends that defendants' motion for summary judgment be granted, and on the basis denies plaintiff's request for appointment of counsel.

1

1      II.      Background

2          This action challenges the alleged conduct of defendants Deleon and Sakyi in October

3    2010, when plaintiff was incarcerated at California State Prison-Sacramento (CSP-SAC).[1]

4    Plaintiff filed his original complaint on June 3, 2014, wherein he alleged that he was involved in

5    an altercation with another inmate on October 17, 2010, resulting in abrasions to his left hip and

6    pain in his pelvis.  See ECF No. 1.  The complaint alleged "deliberate indifference" by "CSP

7    Sacramento" on the ground that "[i]t took medical 72 hours to diagnose and treat my fractured

8    pelvis."  Id. at 1.

9          Before this court could screen his original complaint pursuant to 28 U.S.C. § 1915A,

10   plaintiff filed the operative First Amended Complaint (FAC) on July 17, 2014.  See ECF No. 24.

11   By order filed October 24, 2014, this court found upon screening that the FAC states cognizable

12   Eighth Amendment claims against CSP-SAC Correctional Officers Deleon and Sakyi and two

13   unnamed officers, based on their alleged conduct that occurred two days after the injuries alleged

14   in plaintiff's original complaint.  See ECF No. 9 at 4.  The court's assessment was based on the

15   following allegations of the FAC, directed at the two named correctional officers and two

16   unidentified officers, ECF No. 24 at 3 (sic):

17                On 10-19-10 I was transported from one unit to the next on a
             stretcher when I arrived four officers pulled me out of the stretcher
18           and started draging me causing my foot to be cut open.  I collapsed
             they put me in a wheelchair took me to a cell tied me to a retention
19           chain twisted my arm while it was thru the food port leaving a cut

20   _____

21   [1] Plaintiff's custody during the course of this action is marked by his repeated transfers among
     various correctional facilities.  When plaintiff commenced this action in 2014, he was
22   incarcerated at the California Health Care Facility (CHCF) in Stockton.  Plaintiff was
     subsequently transferred to Kern Valley State Prison (KVSP), see ECF Nos. 5, 38; returned to
23   CHCF, see ECF No. 45; then transferred to the California Men's Colony (CMC) in San Luis
     Obispo, via KVSP, see ECF No. 46-8.  In March 2016, plaintiff was transferred to California
24   State Prison-Corcoran.  See ECF No. 52.  In July 2016, he was transferred to Mule Creek State
     Prison in Ione.  See ECF No. 59.  In September 2016, plaintiff was transferred to Salinas Valley
25   State Prison (SVSP), see ECF No. 62, where he presently remains, according to the Inmate
     Locator website operated by CDCR.  See http://inmatelocator.cdcr.ca.gov/.  See also Fed. R.
26   Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by
     sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill,
27   386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state
     agency not subject to reasonable dispute.").
28

1    on it and punching me in the face.  All of this happened while my
     pelvis was fractured.

2

3        Plaintiff noted on the form portion of his FAC that he had filed an administrative

4   grievance related to the facts of this case, but the process had not been completed.[2]  See ECF No.

5   24 at 2.  On March 17, 2015, plaintiff filed a one-page letter addressed to the court which states in

6   pertinent part, ECF No. 31 at 1 (sic):

7            [A]bout administrative remedies I filed a 602 after I was released
             from medical and I never got a response.  I sent in a letter trying to
8            get something and I got a letter that really didn't say much instead
             of the appeal.

9

10       This case survived defendants' prior motion to dismiss based on plaintiff's concession on

11  the face of his FAC that he had not exhausted his administrative remedies.  See ECF Nos. 49, 50.

12  In opposition to that motion, plaintiff filed the following pertinent but unverified statements:[3]

13           In December of 2010 I filed a 602 to K.A. Daly the appeals
             coordinator but I never got a respone wich is shown on the face of
14           the amended complaint.  [¶]  On papers that I got from the prison
             law office it states when fileing a civil lawsuit thus prisoners should
15           file a 602 or at least try to wich is what I did.  See ECF No. 36 at 1
             (sic).

16
             I did timely submit my grievance because I wasn't released from
17           San Joaquin Hospital until the next week and I was in CSP SAC
             CTC [Correctional Treatment Center] for a few weeks after that.  I
18           was also placed in AD-SEG where it takes time to get a pen and
             602 and U Save Em envelope to even file the grievance, wich aren't
19           passed out until Sunday. I turned in the 602 on 12-9-10 it was sent
             back to me on 12-15-10 saying that it had to be placed in a U Save
20           Em envelope to get a log number wich I did and sent it back in.  See
             ECF No. 40 at 1 (sic).

21
             At the time of the incident I was Keheya,[4] EOP, on an injection
22           every two weeks, on oral medications I hear voices and see things
             and I have auditorial hallussinations.  None of this has changed I'm
23           still on it.  I feel like someone should have helped me exhaust my
             administrative remedies.  If I have to go trial I don't see myself
24           going pro per and I would like to be apointed counsel.  I've try to

25  _____
    [2]  Plaintiff made the same notation in his original complaint.  See ECF No. 1 at 2.
26  [3]  These unverified statements are provided as background only and are not relied on in assessing
    the merits of the pending motion for summary judgment.
27  [4]  See Keyhea v. Rushen (1st Dist. 1986) 178 Cal. App. 3d 526 (authorizing involuntary
    administration of psychotropic medications to prisoners pursuant to appropriate procedural
28  protections).

                                                    3

1                kill myself 4 times and I've been to DSH 4 times.  [¶] P.S.  I was
just sent to the crisis bed in CMC.  <u>See</u> ECF No. 42 (sic).

2

3         Because relevant to the court's consideration of the pending motion for summary

4 judgment, the court recounts its reasons for recommending denial of defendant's motion to

5 dismiss on the same grounds, ECF No. 49 at 6-9:

6                Dismissal of a prisoner civil rights action for failure to exhaust
administrative remedies must generally be brought and decided

7                pursuant to a motion for summary judgment under Rule 56, Federal
Rules of Civil Procedure.  <u>Albino v. Baca</u>, 747 F.3d 1162 (9th Cir.

8                2014) (en banc). Defendant bears the burden of proving that there
was an available administrative remedy that the prisoner did not

9                exhaust. <u>Id.</u> at 1172.  If defendant meets this burden, then the
burden shifts to plaintiff to "come forward with evidence showing

10              that there is something in his particular case that made the existing
and generally available administrative remedies effectively

11              unavailable to him." <u>Id.</u>  In adjudicating summary judgment on the
issue of exhaustion, the court must view all the facts in the record in

12              the light most favorable to plaintiff. <u>Id.</u> at 1173.

13              However, a motion for summary judgment is unnecessary "[i]n the
rare event that a failure to exhaust is clear on the face of the

14              complaint, [when] a defendant may move for dismissal under Rule
12(b)(6)." <u>Albino</u>, 747 F.3d at 1166 (overruling <u>Wyatt v. Terhune</u>,

15              315 F.3d 1108, 1119 (9th Cir. 2003), insofar as it held that failure
to exhaust should be raised by defendants as an "unenumerated

16              Rule 12(b) motion."). . . .

17              Construing the pertinent allegations of the FAC in the light most
favorable to plaintiff, and with reference to the substance of

18              plaintiff's opposition and surreply, the court is unable to conclude
that plaintiff's failure to exhaust his administrative remedies was

19              not due to the effective unavailability of those remedies.

20              There is support for plaintiff's argument that his failure to timely
submit his initial grievance may be excused because the appropriate

21              forms for submitting a grievance were not timely made available to
him.  In <u>Marella v. Terhune</u>, 568 F.3d 1024 (9th Cir. 2009) (per

22              curiam), the Court of Appeals reversed the district court's dismissal
of a prisoner case for failure to exhaust administrative remedies in

23              part because the inmate did not have access to the necessary
grievance forms within the prison's time limits.  The plaintiff in

24              <u>Marella</u> contended that he was unable to acquire and complete a
grievance within 15 days after his alleged assault (he submitted his

25              grievance 33 days thereafter) because he initially spent two days in
the hospital, was then moved to the infirmary, and then placed in

26              administrative segregation.  His appeal was then rejected by prison
officials as untimely at the first formal level of review.  The Court

27              of Appeals, relying on CDCR's pertinent regulations,[5] held that

_____

28  [5] The Court of Appeals summarized these regulations as follows, <u>Marella</u>, 568 F.3d at 1027:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

plaintiff's failure to timely submit his grievance should not defeat his claim if plaintiff did not have access to the necessary form and the ability to complete and timely submit it.  The case was remanded to the district court to make "factual findings as to whether Marella had access to the necessary forms and whether he had the ability to file during his stay in the hospital and prison infirmary, or during the administrative lockdown." Id. at 1027. Accord, Millner v. Biter, 2016 WL 110425, at *6-7, 2016 U.S. Dist. LEXIS 3213 (E.D. Cal. Jan. 11, 2016) (Case No. 1:13-cv-02029 AWI SAB P) (recommending denial of defendants' motion for summary judgment subject to an evidentiary hearing to determine whether the administrative grievance process was available to plaintiff during his placement in a mental health crisis bed, suicide watch, and subsequent recovery; and, if so, whether he filed an untimely grievance and received no response); see also Sapp, supra, 623 F.3d at 822 (citing with approval decisions in the Seventh and Eighth Circuits which have held "that administrative remedies are not 'available,' and exhaustion is therefore not required, where prison officials refuse to give a prisoner the forms necessary to file an administrative grievance." Id. (citing Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004), and Miller v. Norris, 247 F.3d 736, 738, 740 (8th Cir. 2001)).

In the present case, the FAC asserts that "[i]In December of 2010 I filed a 602 to K.A. Daly the appeals coordinator but I never got a respon[s]e." ECF No. 36 at 1.  In his surreply reviewed by this court, plaintiff contends that, following his alleged injury, he was hospitalized "until the next week;" then placed in CSP-SAC's "CTC" for a "few weeks;" then placed in administrative segregation where plaintiff was unable to obtain all the appropriate materials "until Sunday." ECF No. 40 at 1.  Plaintiff also states that, at the time of his injury, he was receiving involuntary psychotropic medications to treat visual and auditory hallucinations.  See ECF No. 42.  Plaintiff explains that, while in administrative segregation, he initially submitted his grievance on December 9, 2010, but that it was "sent back to me on 12-15-10 saying that it had to be placed in a U Save Em envelope to get a log number w[h]ich I did and sent it back in." Id.  Plaintiff alleges that he received no response. These allegations indicate that there are factual matters beyond the FAC which must be resolved before the court can determine whether

---

The California Code of Regulations provides that an inmate must submit an appeal within fifteen working days of the event or decision being appealed, but the appeals coordinator is only permitted to reject an appeal if "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." Cal. Code Regs. tit. 15 §§ 3084.6(c) and 3084.3(c)(6) (emphasis added).  The California Department of Corrections and Rehabilitation Operating Manual directs the appeals coordinator to "ensure that the inmate or parolee had, in fact, the opportunity to file in a timely manner." Section 54100.8.1.  Thus, the prison's regulations explicitly create an exception to the timely filing requirement.  If Marella was unable to file within the fifteen-day filing period, his failure to file timely does not defeat his claim.

administrative remedies were "effectively unavailable" to plaintiff during the relevant period. The necessary assessment cannot be made on a motion to dismiss but may be further developed and resolved on a motion for summary judgment.

Further, if plaintiff can demonstrate that he was unable, due to no fault of his own, to timely submit his grievance, then the court must next determine whether the failure of prison officials to respond to his grievance was based on acceptable reasons.  See Sapp, supra, 623 F.3d at 824 (when prison officials decline to reach the merits of a grievance "for reasons inconsistent with or unsupported by applicable "regulations," administrative remedies were "effectively unavailable.");  see also, id. at 822 (citing with approval Dole v. Chandler, 438 F.3d 804, 809, 811 (7th Cir. 2006), which holds that "prison officials' failure to respond to a properly filed grievance makes remedies 'unavailable' and therefore excuses a failure to exhaust.");  accord, Nunez, supra, 591 F.3d at 1224-26 (plaintiff excused from exhausting administrative remedies where he took "reasonable steps" to exhaust his claim but was precluded from exhausting because of an official mistake).

For these many reasons, this court finds that this is not the "rare event" when failure to exhaust is clear on the face of the complaint.  See Albino, 747 F.3d at 1166.  Although plaintiff has not shown that administrative remedies were "effectively unavailable" to him during the relevant period, he has demonstrated that this as an issue that should be addressed on a fuller record at summary judgment.  Therefore, defendants' motion to dismiss should be denied without prejudice to filing a motion for summary judgment on the same matter.

Following this court's denial of defendants' motion to dismiss, defendants filed an answer to the FAC.  See ECF No. 51.  A Discovery and Scheduling Order was issued on March 14, 2016, with a discovery deadline of July 15, 2016, and a dispositive motion deadline of October 14, 2016.  See ECF No. 53.  There were no significant discovery disputes.  Defendants' motion for summary judgment followed on July 22, 2016.  See ECF No. 58.  Plaintiff timely filed a one-page opposition with a two-page exhibit that recounts plaintiff's "external movements" between February 2009 and June 2011.  See ECF No. 60.  Defendants filed their reply on August 9, 2016.  See ECF No. 61.

III.    Legal Standards

        A.      Legal Standards for Exhausting Administrative Remedies

A prisoner's failure to exhaust available administrative remedies is an affirmative defense that generally must be raised by defendants and proven on a motion for summary judgment.  See

6

1    <u>Albino v. Baca</u>, 747 F.3d 1162, 1172 (9th Cir. 2014), <u>cert. denied sub nom.</u> <u>Scott v. Albino</u>, 135

2    S. Ct. 403 (2014).  The exhaustion requirement is based on the important policy concern that

3    prison officials should have "an opportunity to resolve disputes concerning the exercise of their

4    responsibilities before being haled into court."  <u>Jones v. Bock</u>, 549 U.S. 199, 204 (2007).  When

5    grieving their appeal, prisoners must adhere to CDCR's "critical procedural rules."  <u>Woodford v.</u>

6    <u>Ngo</u>, 548 U.S. 81, 91 (2006).  "[I]t is the prison's requirements . . . that define the boundaries of

7    proper exhaustion."  <u>Jones</u>, 549 at 218.  Regardless of the relief sought, a prisoner must pursue an

8    appeal through all levels of a prison's grievance process as long as some remedy remains

9    available.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy

10    remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,'

11    and the prisoner need not further pursue the grievance."  <u>Brown v. Valoff</u>, 422 F.3d 926, 935 (9th

12    Cir. 2005) (original emphasis) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001)).

13        Following this court's decision on defendants' motion to dismiss, the United States

14    Supreme Court provided additional guidance in assessing whether a prisoner has exhausted all

15    available administrative remedies before commencing an action in federal court.  The Supreme

16    Court emphasized that "[t]he Prison Litigation Reform Act of 1995 (PLRA) mandates that an

17    inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge

18    prison conditions."  <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1854-55 (June 6, 2016) (quoting 42 U.S.C. §

19    1997e(a)).  "The only limit to § 1997e(a)'s mandate is the one baked into its text:  An inmate

20    need exhaust only such administrative remedies as are 'available.'"  <u>Ross</u>, 136 S. Ct. at 1862.

21    Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are

22    'capable of use' to obtain 'some relief for the action complained of.'"  <u>Id.</u> at 1859 (quoting <u>Booth</u>,

23    532 U.S. at 738).

24        The Supreme Court further clarified that there are only "three kinds of circumstances in

25    which an administrative remedy, although officially on the books, is not capable of use to obtain

26    relief."  <u>Ross</u>, at 1859.  These circumstances are as follows:  (1) the "administrative procedure . . .

27    operates as a simple dead end – with officers unable or consistently unwilling to provide any

28    relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes,

1    practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it

2    demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance

3    process through machination, misrepresentation, or intimidation." Id. at 1859-60 (citations

4    omitted). Other than these circumstances demonstrating the unavailability of an administrative

5    remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial discretion,"

6    which "means a court may not excuse a failure to exhaust, even to take [special] circumstances

7    into account." Ross, 136 S. Ct. at 1856-57.

8                    B.       Legal Standards for Summary Judgment

9          The Ninth Circuit has laid out the analytical approach to be taken by district courts in

10   assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner

11   to exhaust his administrative remedies. As set forth in Albino, 747 F.3d at 1172 (citation and

12   internal quotations omitted):

13               [T]he defendant's burden is to prove that there was an available
                 administrative remedy, and that the prisoner did not exhaust that
14               available remedy. . . . Once the defendant has carried that burden,
                 the prisoner has the burden of production. That is, the burden shifts
15               to the prisoner to come forward with evidence showing that there is
                 something in his particular case that made the existing and
16               generally available administrative remedies effectively unavailable
                 to him. However, . . . the ultimate burden of proof remains with the
17               defendant.

18         Summary judgment is appropriate when the moving party "shows that there is no genuine

19   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

20   Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of

21   proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144

22   v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

23   (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish

24   this by "citing to particular parts of materials in the record, including depositions, documents,

25   electronically stored information, affidavits or declarations, stipulations (including those made for

26   purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

27   that such materials "do not establish the absence or presence of a genuine dispute, or that the

28   ////

                                                      8

1    adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56

2    (c)(1)(A), (B).

3         "Where the non-moving party bears the burden of proof at trial, the moving party need

4    only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

5    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

6    Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

7    against a party who fails to make a showing sufficient to establish the existence of an element

8    essential to that party's case, and on which that party will bear the burden of proof at trial.  See

9    Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

10   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

11   circumstance, summary judgment should be granted, "so long as whatever is before the district

12   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

13        If the moving party meets its initial responsibility, the burden then shifts to the opposing

14   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

15   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

16   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

17   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

18   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

19   Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] [p]laintiff's verified complaint

20   may be considered as an affidavit in opposition to summary judgment if it is based on personal

21   knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122,

22   1132 n.14 (9th Cir. 2000) (en banc).[6]

23   _____

24   [6]  In addition, in considering a dispositive motion or opposition thereto in the case of a pro se
     plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's
     verified complaint or opposition.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003)

25   (evidence which could be made admissible at trial may be considered on summary judgment);
     see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007)

26   (district court abused its discretion in not considering plaintiff's evidence at summary judgment,

27   "which consisted primarily of litigation and administrative documents involving another prison
     and letters from other prisoners" which evidence could be made admissible at trial through the

28   other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit

1    The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

2    might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

3    Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809

4    F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

5    reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,

6    Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7    In the endeavor to establish the existence of a factual dispute, the opposing party need not

8    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

11   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12   Matsushita, 475 U .S. at 587 (citations omitted).

13   In evaluating the evidence to determine whether there is a genuine issue of fact," the court

14   draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

15   Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

16   It is the opposing party's obligation to produce a factual predicate from which the inference may

17   be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

18   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

19   party "must do more than simply show that there is some metaphysical doubt as to the material

20   facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the

21   nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

22   omitted).

23   In applying these rules, district courts must "construe liberally motion papers and

24   pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

25   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

26   support an assertion of fact or fails to properly address another party's assertion of fact, as

27

28   decisions may be cited not for precedent but to indicate how the Court of Appeals may apply
     existing precedent).

10

1    required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion

2    . . . ."  Fed. R. Civ. P. 56(e)(2).

3         If a court concludes that a prisoner failed to exhaust his available administrative remedies,

4    the proper remedy is dismissal without prejudice.  See Jones, 549 U.S. at 223-24; Lira v. Herrera,

5    427 F.3d 1164, 1175-76 (9th Cir. 2005).

6         IV.    Undisputed Facts

7         The following facts are taken from Defendants' Statement of Undisputed Facts (DUF),

8    ECF No. 58-3, and supporting declarations and exhibits; plaintiff's verified FAC, ECF No. 24,

9    and verified answers to interrogatories, ECF No. 58-9, Ex. A.  These facts are deemed undisputed

10   by the parties for purposes of resolving the pending motion for summary judgment.[7]

11       • Plaintiff Robert Epps was a state prisoner at CSP-SAC from February 19, 2009 to

12   March 1, 2011.  See Weathersbee Decl., ¶ 5, Ex. A (documenting plaintiff's "External

13   Movements").

14       • Plaintiff alleges that defendants' challenged conduct took place at CSP-SAC on

15   October 19, 2010, where both defendants were then employed as correctional officers.

16       • Plaintiff was hospitalized from October 20, 2010 to October 25, 2010; he was moved to

17   CSP-SAC's Facility B on October 25, 2010, apparently to the Correctional Treatment Facility

18   (CTC).  Weathersbee Decl., ¶ 5, Ex. A; Pltf. Oppo., ECF No. 60 at 1.

19       • Plaintiff was moved to CSP-SAC's Administrative Segregation Unit (ASU) on

20   November 15, 2010, where he remained until December 13, 2010.  Heintschel Decl., ¶ 5 (relying

21   on Ex. B to Weathersbee Decl. (documenting plaintiff's "Bed Assignments/Internal

22   Movements")).

23

24   _____

25   [7]  Plaintiff has not refuted defendants' statement of undisputed facts.  Local Rule 260(b) requires
     that a party opposing a motion for summary judgment reproduce the moving party's Statement of
26   Undisputed Facts and admit the facts that are undisputed while denying the facts that are disputed
     with citations to the record.  Plaintiff was informed of these requirements both by the court, see
27   ECF No. 28 at 6, and by defendants, see ECF No. 58-1 at 2.  When a party fails to properly
     address another party's assertion of fact, the court may consider the fact undisputed for purposes
28   of considering the motion for summary judgment.  See Fed. R. Civ. P. 56 (e)(2).

- In 2010, as now, there was an administrative appeals process available to CSP-SAC inmates, codified in Title 15 of the California Code of Regulations.[8]  DUF 5, 11-12, 16-17.

- In 2010, CSP-SAC inmates seeking to resolve their grievances through the appeals process were required to submit an appeal within fifteen working days after the event being appealed.  DUF 15.

- Then, as now, the CSP-SAC Appeals Coordinator's Office received, reviewed, and tracked all non-medical inmate appeals submitted for First and Second Level Review at CSP-SAC.  DUF 8.

- Then, as now, CDCR's Office of Appeals (OOA) received, reviewed, and maintained inmates' non-medical appeals accepted at the third and final level of administrative review.  DUF 19, 20.

- At all relevant times, an inmate's appeal was required to proceed through Third Level Review in order to fully exhaust the available administrative process.  DUF 9.

- Between 2009 and 2013, K. Daly was the Appeals Coordinator at CSP-SAC.  See Daly Decl., ¶ 2.

- If the CSP-SAC Appeals Coordinator's Office received an appeal that was untimely, it was sent back to the inmate with a screening form indicating that the appeal had been cancelled because untimely, but inviting the inmate to explain why it was untimely or provide a reason why it should have been accepted.  DUF 16.

- If an inmate adequately explained why an appeal was untimely submitted, such as inability to access writing materials or hospitalization, and there were no other defects, CSP-SAC Appeals Coordinator Daly would accept the appeal and accord it a log number.  DUF 17; see also Daly Decl., ¶¶ 8, 9.

---

[8]  In 2010, inmates could "appeal any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a) (Oct. 2009 rev.).  The appeals process consisted of:  (1) an informal appeal, where an inmate could attempt to resolve a grievance informally with staff; (2) a formal First Level appeal; (3) a formal Second Level appeal, to be conducted by the institution head or his or her designee; and (4) a formal Third Level, or Director's Level, appeal.  Id., § 3084.5; see also id., § 3084.2(b) (requiring inmate to attempt informal resolution of his grievance before filing a formal appeal).

1    • Non-medical appeals accepted at CSP-SAC between 2009 and 2013 were assigned a

2    log number in the institution's Inmate Appeals Tracking System (IATS).  DUF 11, 12.  If an

3    appeal was screened out, it was not given a log number, but recorded as a single line entry

4    without designating any level of review.  DUF 13.

5         • The CSP-SAC Appeals Coordinator's Office has no record of receiving any non-

6    medical appeal from plaintiff between October 19, 2010 (the alleged date of defendants'

7    challenged conduct) and July 17, 2014 (the date plaintiff filed his FAC); hence, there is no record

8    of an appeal submitted by plaintiff that was either screened out or accepted for First or Second

9    Level Review.  DUF 18; see Burnett Decl., ¶¶ 7, 8, Ex. A (IATS, Levels I & II).

10        • The OOA has no record of receiving a non-medical appeal from plaintiff at Third Level

11   Review.  DUF 19-21; Voong Decl., ¶¶ 3-4, 6-7, Ex. A (IATS, Level III).

12        • Plaintiff concedes that he did not exhaust an administrative appeal relevant to the

13   matters challenged in this action.  In response to discovery propounded by defendants, plaintiff

14   averred that he "submitted" a grievance on December 9, 2010, but "never got a response.  I

15   submitted a 602 to K.A. Daly. . . . I was precluded from fileing (sic) my 602 because it seemed to

16   the appeal coordinator that I didn't file in time."  See Ehlenbach Decl., Ex. A (ECF No. 58-9 at 5,

17   9-10). [9]

18        V.    Analysis

19        Based upon these facts, the court finds that defendants have met their burden of proving

20   that administrative remedies were generally available to plaintiff at CSP-SAC during the relevant

21   period, and that plaintiff did not exhaust his administrative remedies before commencing this

22   action.  See Albino, 747 F.3d at 1172.  The burden now shifts to plaintiff to "come forward with

23   evidence showing that there is something in his particular case that made the existing and

24   generally available administrative remedies effectively unavailable to him."  Id.

25

26

-------

27   [9] Exhibit A to the Ehlenbach Declaration provides Plaintiff's Responses and Supplemental
     Responses to Defendant DeLeon's First Set of Interrogatories, and Plaintiff's corresponding
28   verifications.

1        Plaintiff's only argument in opposition to defendants' motion provides in full, ECF No. 60

2  at 1 (sic):

> 3    I have evidence to show i was unable to timley file my 602 at no
> 4    fault of my own and was precluded.  Please see the date circled on
> the external movement sheet?
>
> 5    I was sent to the hospital on 10-20-10 i got back on 10-25-10 and
> 6    was released from CTC on 11-15-10.  I was given the material to
> file my 602 on 11-21-10.

7  Plaintiff's attachment (documenting plaintiff's "External Movements") is consistent with that

8  provided by defendants, as summarized above.  It reflects that plaintiff was hospitalized from

9  October 20, 2010 to October 25 2010, then moved to CSP-SAC's Facility B (CTC) until

10  November 15, 2010, when he was moved to Facility A and the ASU.

11        The admissible evidence indicates that plaintiff failed to submit any administrative appeal,

12  even one that was screened out and accorded a "single line entry."  Assuming that plaintiff was

13  indeed precluded from submitting a timely appeal, because incapacitated through November 15,

14  2010 (during his hospitalization and subsequent treatment at CTC), he retained the option of

15  attempting to submit an untimely appeal based on exceptional circumstances after his move to the

16  ASU on November 15, 2010.  As earlier noted, CSP-SAC Appeals Coordinator Daly avers that

17  she would routinely consider untimely appeals based on exceptional circumstances.  Daly Decl.

18  ¶¶ 8, 9.  CDCR regulations clearly provide for this exception.[10]  As set forth in Cal. Code Regs.

19  tit. 15, § 3084.6(a)(4) (2010):

> 20    Under exceptional circumstances any appeal may be accepted if the
> 21    appeals coordinator or third level Appeals Chief conclude that the
> appeal should be subject to further review.  Such a conclusion shall
> be reached on the basis of compelling evidence or receipt of new
> 22    information such as documentation from health care staff that the
> inmate or parolee was medically or mentally incapacitated and
> 23    unable to file.

24        Plaintiff concedes that by November 21, 2010 he had the necessary materials to submit an

---

25  [10]  Cf., <u>Farkas v. State of Nevada Dep't of Corrections</u>, 2016 WL 3397418, at *3, 2016 U.S. Dist.
26  LEXIS 78014, at *9 (D. Nev. June 14, 2016) ("Farkas does not claim that he failed to timely file a
grievance or timely internally appeal a grievance response due to his transfer or due to pain or
27  other complications stemming from his injuries.  Even if he had, the NDOC regulations allow for
resumption of a grievance without harm to the validity of the prisoner's claims if compelling
28  circumstances prevented the prisoner from timely pursuing his grievance.").

1   untimely appeal based on exceptional circumstances.  Plaintiff's earlier unverified statements that

2   he was impeded by his temporary lack of access to a pen and U Save Em envelope are unavailing.

3   Defendants' evidence includes the declaration of C. Heintschel, CSP-SAC Correctional

4   Lieutenant, who worked in the ASU from October to December 2010.  Lt. Heintschel avers in

5   pertinent part, Heintschel Decl., ¶ 5:

6
7   During that time, inmates were given a packet of materials upon
    their arrival to ASU that included appeal forms (CDC Form 602s),
    along with pen fillers for writing.  ASU inmates could obtain
8   additional appeal forms by requesting them from staff, in
    accordance with local policy.  ASU staff would distribute forms,
    collect inmate appeals, log them, and forward them to the
9   appropriate staff for response on a daily basis, except for weekends
    and holidays.
10

11  Lt. Heintschel has also submitted pertinent provisions of CDCR's Department Operations Manual

12  (DOM) that accord ASU inmates the option of submitting an appeal through the Inter-

13  Departmental mail system or directly handing their appeal to the housing floor officer for deposit

14  in the Appeal Drop Box.  See id., Ex. A (DOM § 54100.6).  Appeals are processed on a daily

15  basis, Monday through Friday.  Id. (DOM § 54100.9).  Plaintiff does not aver that he attempted to

16  hand his appeal directly to a hearing officer in lieu of waiting for a U Save Em envelope.

17      Plaintiff averred in his responses to defendants' discovery requests that he submitted his

18  appeal to Appeals Coordinator Daly on December 9, 2010, 24 days after his ASU placement and

19  18 days after he had the necessary materials.  See Ehlenbach Decl., Ex. A (ECF No. 58-9 at 5, 9-

20  10).  Plaintiff asserted both that he "never got a response" and that he "was precluded . . .

21  because it seemed to the appeal coordinator that I didn't file in time."  Id.  The declaration of

22  Appeals Coordinator Daly does not address this allegation.  However, even assuming that this

23  matter presents a factual dispute, the court finds that it is not sufficiently material.  Plaintiff bears

24  the burden of producing *evidence* that available administrative remedies were effectively

25  unavailable to him.  Here plaintiff has only his word, which is contradicted by the IATS data.

26  Without a copy of the appeal that plaintiff allegedly resubmitted in the U Save Em envelope or

27  the appeal that Appeals Coordinator Daly found untimely (these may be the same appeal), the

28  court is unable to infer that plaintiff made a good faith effort to exhaust his administrative

15

1    remedies.  Despite the availability of necessary materials and routine procedures for submitting

2    an appeal while housed in the ASU, and the availability of the exceptional circumstances

3    exception for obtaining review of an untimely appeal, plaintiff's assertion that he was

4    "precluded" from exhausting his available administrative remedies, without more, fails to meet

5    his evidentiary burden.

6         As a result, this court is unable to find that plaintiff's circumstances come within any of

7    the three limited exceptions to exhaustion recognized by the Supreme Court, i.e., that the

8    available appeal process was inherently ineffective or incomprehensible, or that a prison official

9    thwarted plaintiff's efforts "through machination, misrepresentation, or intimidation." Ross, 136

10   S. Ct. at 1859-60 (citations omitted).

11        Because plaintiff has failed to present any evidence demonstrating that CSP-SAC's

12   generally available administrative remedies were effectively unavailable to him before

13   commencing this action or filing his FAC, see Albino, 747 F.3d at 1172, the undersigned will

14   recommend that this action be dismissed without prejudice for failing to state a claim upon which

15   relief may be granted, id. at 1169.

16        V.      Motion to Appoint Counsel

17        The court has previously informed plaintiff that voluntary counsel may be appointed in

18   prisoner cases only in exceptional circumstances.[11]  Due to the complete lack of evidence to

19   support plaintiff's assertion that he was unable to exhaust his administrative remedies, the court is

20   unable to reach the merits of this action.  Thus, even if the court otherwise found exceptional

21   circumstances warranting the appointment of counsel, (which the court did not previously find,

---

22   [11] This court is without authority to require counsel to represent indigent plaintiffs in Section
23   1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  Only in certain
     exceptional circumstances may the court request that a specific attorney voluntarily represent
24   such plaintiff.  See 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.
     1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In making this
25   assessment, the court must consider plaintiff's likelihood of success on the merits of his action as
     well as plaintiff's ability to articulate his claims pro se in light of the complexity of the legal
26   issues involved.  See Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).  Plaintiff bears the
     burden of demonstrating exceptional circumstances.  Circumstances common to most prisoners,
27   such as lack of legal education and limited law library access, do not establish exceptional
28   circumstances warranting the appointment of voluntary counsel.  Id.

16

1  see ECF No. 49),[12] appointment of counsel would be futile.  For these reasons, plaintiff's request

2  for appointment counsel must be denied.

3          VI.     Conclusion

4          For the foregoing reasons, IT IS HEREBY ORDERED that plaintiff's request for

5  appointment of counsel, ECF No. 57, is denied.

6          Additionally, IT IS HEREBY RECOMMENDED that:

7          1.  Defendants' motion for summary judgment, ECF No. 58, be granted, due to plaintiff's

8  failure to exhaust his available administrative remedies; and

9          2.  This action be dismissed without prejudice for failure state a claim upon which relief

10  may be granted.

11         These findings and recommendations are submitted to the United States District Judge

12  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

13  after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

16  failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: January 9, 2017

19                                          _____
                                            ALLISON CLAIRE
20                                          UNITED STATES MAGISTRATE JUDGE

21

22

----

[12] This court previously found in pertinent part, ECF No. 49 at 10:

23              The merits of plaintiff's claims (moreover the precise contours of
                plaintiff's claims []) remain unclear, and may be resolved if a copy
24              of plaintiff's original administrative grievance can be located.  The
                court has found that the FAC states potentially cognizable Eighth
25              Amendment claims for excessive force against defendants Deleon
                and Sakyi . . . . [However,] [i]n light of plaintiff's failure to exhaust
26              his administrative remedies, these allegations have not yet been
                sufficiently developed to conclude that plaintiff is likely to succeed
27              on the merits of his claims. Only upon further development of this
                case can the court assess plaintiff's ability to articulate his claims
28              pro se in light of the complexity of the legal issues involved.

17